**NATURAL MOTION BY SANDRA, INC. and Sandra U. Butler, Petitioners,**

v.

**DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent,**

**Estate of Richard Andre Hamilton, Intervenor.**

**No. 97–AA–1664.**

District of Columbia Court of Appeals.

Argued Oct. 8, 1998.
Decided March 18, 1999.

195

Karen E. McDonald, for petitioner.

Laura K. McNally, Washington, DC, for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before FARRELL * and RUIZ, Associate Judges, and NEWMAN, Senior Judge.

RUIZ, Associate Judge.

This is a petition for review of a decision of the District of Columbia Commission on Human Rights (Commission) awarding intervenor, the Estate of Richard Andre Hamilton, litigation expenses and attorney's fees. Petitioners, Sandra Butler and Natural Motion by Sandra, Inc., claim that the Commission erred in awarding attorney's fees because Hamilton's petition for fees was not timely filed. In the alternative, appellants assert that, because Hamilton, on remand, waived his claim for back pay damages, the Commission should have subtracted specific charges related to mitigation of damages and back pay from the final award of attorney's fees. We conclude that Hamilton's fee petition was timely filed and, therefore, the Commission properly awarded attorney's fees. We also find that the final amount awarded by the Commission was appropriate. Accordingly, we affirm.

In 1991, Sandra Butler, owner of Natural Motion by Sandra, Inc., fired Richard Hamilton, a long-time hair salon employee. Hamil-

* Judge Farrell joins the opinion, but does not join footnote 9.

ton filed a complaint with the Commission claiming that his termination constituted disability discrimination. The Commission found Natural Motion liable for violations of the Human Rights Act of 1977, D.C.Code § 1–2501 et seq. (1992).

In 1997, this court affirmed the Commission's findings on liability and compensatory damages, but reversed the award of back pay and remanded for further inquiry into whether Hamilton adequately mitigated his damages. We also dismissed as premature the portion of the petition for review that challenged the attorney's fees award because the Commission had not yet determined the amount.[1] Subsequently, without conceding the merits of his back pay claim, Hamilton waived his claim for back pay damages "to avoid the further delay that would be caused by protracted litigation on this issue."[2] This left attorney's fees and costs as the sole issue for the Commission to consider. On September 12, 1997, the Commission issued its Final Decision and Order on Remand awarding Hamilton $24,940.78 for litigation expenses and $236,098.89 for attorney's fees. Butler and Natural Motion by Sandra, Inc. appeal from this decision, claiming that Hamilton's estate is not entitled to the total amount awarded by the Commission.[3]

■ This court's review of the Commission's order awarding costs and attorney's fees is limited to determining whether the order was in accordance with the law and supported by substantial evidence in the record. See Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights, 527 A.2d 282, 287 (D.C.1987); RAP, Inc. v. District of Columbia Comm'n on Human Rights, 485 A.2d 173, 177 (D.C.1984) (citing D.C.Code § 1–1510(a)(1) (1981)). We deal first with the issue of whether Hamilton's March 16, 1995 fee petition was timely

filed. Natural Motion by Sandra, Inc. and Butler contend that Hamilton's fee petition was late because it was filed three months after the Commission issued its December 29, 1994 Final Decision and Order. Although both Hamilton and Alice Nolan, Butler's business partner, filed motions for reconsideration subsequent to the December 29, 1994 order, appellants claim that, as to all issues not addressed on reconsideration, this December 29, 1994 order was final.

In determining that Hamilton's fee petition was timely, the Commission looked to the District of Columbia Superior Court rules for guidance. Superior Court Civil Rule 54 provides that a fee petition must be "filed and served no later than fourteen days after entry of judgment." Super. Ct. Civ. R. 54(d)(2)(B). The term judgment is defined as "any order from which an appeal lies." Super. Ct. Civ. R. 54(a). Natural Motion does not contest the Commission's reliance on Super. Ct. Civ. R. 54. It instead argues that the fee petition should have been filed within fourteen days of the Commission's December 29, 1994 order because that order was appealable as to the attorney's fee issue which was not addressed in the motion for reconsideration. Thus, the timeliness of Hamilton's fee petition turns on whether the Commission's December 29, 1994 Final Decision and Order was immediately appealable given that motions for reconsideration were filed subsequent to the order.

■ The D.C. Court of Appeals Rules state that "[t]he running of the time for filing a petition for review is terminated as to all parties by the timely filing ... of a petition for rehearing or reconsideration." D.C.App. R. 15(b); see also Flores v. District of Columbia Rental Hous. Comm'n, 547 A.2d 1000, 1003 (D.C.1988) (time for filing petition for review tolled by filing motion for recon-

---

1. See Natural Motion By Sandra, Inc. v. District of Columbia Comm'n on Human Rights (Natural Motion (I)), 687 A.2d 215 (D.C.1997).

2. In 1997, Hamilton died from complications relating to AIDS. On his death, the estate of Hamilton substituted as Intervenor in this case.

3. Appellants also claim that the Commission erred in awarding attorney's fees because it did not make an explicit finding of bad faith or

vexatious pleadings. However, under the Human Rights Act an award of attorney's fees is not contingent on a Commission finding of bad faith or vexatious pleadings, but on a finding of "unlawful discriminatory practice," D.C.Code § 1–2553(a)(1), which the Commission clearly found in its December 29, 1994 Notice of Final Decision and Order, and this court subsequently affirmed. See Natural Motion (I), supra note 1.

sideration with agency); *United Transp. Union v. I.C.C.*, 276 U.S.App.D.C. 374, 377, 871 F.2d 1114, 1117 (1989) (judicial review of agency action barred until agency acts on any outstanding petitions for reconsideration). Thus, an agency decision is not final for purpose of appeal to this court until all motions for reconsideration have been acted upon by the agency. Consequently, the Commission's December 29, 1994 order was not final until the Commission decided the pending motions for reconsideration. On September 27, 1995, the Commission ruled on the motions for reconsideration, thereby making its Final Decision and Order appeal-

4. In their brief, Natural Motion and Butler indicate that they filed a timely appeal from the Commission's September 27, 1995 order denying the motions for reconsideration, which suggests that appellants understood that this order, rather than the original order issued in December 1994, was the "final judgment" from which an appeal could be noted.

5. Appellants also contend that the fee petition was premature because it was not filed between the time the Commission issued its September 27, 1995 Final Decision and Order and the October 11, 1995 filing deadline. This claim is meritless. The rule requires only that the fee petition be served "no later than" fourteen days after entry of an appealable judgment. Super. Ct. Civ. R. 54(d)(2)(B). In this case, the March 15, 1995 fee petition was filed well within the required time period. *Cf. Kenmore Joint Venture v. District of Columbia Bd. of Zoning Adjustment*, 391 A.2d 269, 274 (D.C.1978) (premature filing of notice of appeal irrelevant given that order became final before appeal was considered and respondent showed no prejudice resulting from prematurity).

6. Appellants make one additional argument in support of their claim that Hamilton was not entitled to attorney's fees. Asserting that the goal of awarding attorney's fees is to compensate the victim, not *pro bono* lawyers, they maintain that Hamilton is not entitled to attorney's fees because he was represented by *pro bono* counsel. We reject this argument. Under the District of Columbia Human Rights Act, upon a finding of "unlawful discriminatory practice," the Commission shall issue an order requiring respondent to pay "reasonable attorney fees." D.C.Code § 1–2553(a)(1) (1981). The statute does not condition attorney fee awards on whether a party had *pro bono* or paid counsel. Moreover, this court has consistently held that attorney's fees are recoverable for *pro bono* counsel. *See Habib v. Thurston*, 517 A.2d 1, 8 n. 12 (D.C.1985) (finding an attorney's fee award challenge on the ground that appellee's counsel was *pro bono* to be frivolous); *Martin v. Tate*, 492 A.2d 270, 274 (D.C.

able.[4] *See Myrick v. District of Columbia Bd. of Zoning Adjustment*, 577 A.2d 757, 762 n. 11 (D.C.1990) (petition for review timely if filed from date pending motions for reconsideration are decided). Under Superior Court rules, Hamilton was required to file and serve the fee petition by October 11, 1995, fourteen days from "entry of judgment." Super. Ct. Civ. R. 54(d)(2)(B). Because he filed the fee petition on March 16, 1995, the petition was well within the statutory time limit.[5] Accordingly, we find no error in the Commission's consideration of the fee petition filed March 16, 1995.[6]

1985) (holding that the *pro bono* status of appellee's counsel did not bar the trial court from awarding attorney's fees); *Frazier v. Franklin Inv. Co.*, 468 A.2d 1338, 1339 n. 1 (D.C.1983) (finding an attorney's fee award proper even though appellant incurred no obligation to actually pay attorney's fees); *see also Copeland v. Marshall*, 205 U.S.App.D.C. 390, 410, 641 F.2d 880, 900 (1980) (en banc) (We find "nothing inconsistent in prosecuting a case in the public interest, agreeing not to charge one's own client a fee and thereafter seeking fees from the losing defendant.") (internal quotations and citations omitted).

The Supreme Court also has concluded that whether plaintiff was represented by private counsel or a non-profit legal services organization is irrelevant to the calculation of fee awards. *See Blanchard v. Bergeron*, 489 U.S. 87, 95, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) ("That a non-profit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party ...."); *Blum v. Stenson*, 465 U.S. 886, 894–95, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (finding it unnecessary to decrease a reasonable fee award simply because counsel acted *pro bono* rather than for profit). Although one goal of awarding attorney's fees is to compensate individual victims, another is to promote the public interest by ensuring that private citizens have the means to enforce anti-discrimination statutes:

> If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest .... Congress therefore enacted the provision for counsel fees—not simply to penalize litigants ... but more broadly, to encourage individuals injured by discrimination to seek judicial relief ....

H.R. Rep. No. 102–40(I), at 75 (1991) (citing *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (explaining the rationale behind the Title VII attorney's fees provision)). Therefore, the fact that Hamilton's counsel was *pro bono* does not preclude the award of attorney's fees.

Appellants also claim that the Commission should have discounted the attorney's fee award by the amount of time Hamilton's counsel spent on the issue of back pay damages because Hamilton waived the back pay claim on remand. Generally speaking, fees related to work on an unsuccessful claim are not recoverable. *See Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Supreme Court has recognized, however, that it is often impossible to distinguish hours spent on individual claims that are ultimately unsuccessful from time spent on the overall successful litigation:

> Many civil rights cases will present only a single claim. In other cases, the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the ... court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on litigation.

*Id.* at 435, 103 S.Ct. 1933. Adopting the *Hensley* analysis, the Commission determined that, because the claims in the case were so "intertwined," it would not reduce Hamilton's overall award because he lost on the issue of back pay.[7] The claim for relief in this case involved a "common core of facts," the employer's unlawful discriminatory treatment of Hamilton, its employee. The back pay claim was just part of Hamilton's claims for damages resulting from this discriminatory treatment, including damages for "humiliation, embarrassment and indignity associated with the firing." *See Natural Motion (I), supra* note 1, 687 A.2d at 218. Because the issues underlying the various damages claims are interrelated, the Commission did not err in determining the fee award based on the ultimate outcome.[8] "Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee.... [T]he fee award should not be reduced simply because the [party] failed to prevail on every contention raised in the lawsuit." *Hensley, supra,* 461 U.S. at 435, 103 S.Ct. 1933. Therefore, we affirm the Commission's decision not to reduce Hamilton's overall fee award simply because he waived the issue of back pay.[9]

7. *See* 4 DCMR § 216.1 (1984) ("In determining whether an adjustment of the presumed reasonable attorney's fee is warranted, the Commission shall be guided by Supreme Court decisions interpreting the attorney's fee provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (k); the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982); and other similar federal fee-shifting laws."). In *Hensley,* the federal statute at issue was 42 U.S.C. § 1988. *See Hensley, supra,* 461 U.S. at 429, 103 S.Ct. 1933.

8. Notably, Hamilton's fee petition contained certain discounts and exclusions in an effort to ensure the reasonableness of the requested amount.

9. We note that there is an alternative ground for affirmance, for if Hamilton was a "prevailing party" on the issue of back pay, he would be entitled to "reasonable" attorney's fees for this claim. *See Hensley, supra,* 461 U.S. at 435, 103 S.Ct. 1933 (noting that the "common core of facts" approach is used where plaintiff does not win on all his claims). In *Natural Motion (I), supra* note 1, this court stated that "[o]rdinarily a victim of discriminatory discharge is entitled to receive back pay." *Id.* at 218 (quoting *Wisconsin*

*Ave. Nursing Home, supra,* 527 A.2d at 291). We found that Hamilton was indeed a victim of discriminatory discharge; thus, he was entitled to receive back pay subject to proof of damages, i.e., "a back pay award should equal the salary the complainant would have received from the time of the violation until the date on which the Commission issued its final order, minus the complainant's actual interim earnings or the amounts he would have earned had he diligently sought other work." *Id.* at 219 (citation omitted). After we remanded for further consideration of whether Hamilton mitigated his damages, Hamilton waived his claim for back pay damages "to avoid ... further delay." Although Hamilton waived his back pay claim, he did not concede the merits. For our purposes, therefore, Hamilton "prevailed" on the issue of entitlement to back pay, even though he did not elect to prove the amount of back pay to which he was entitled.

This conclusion comports with our case law defining a prevailing party. This court has held that a party prevails if he " 'succeed[s] on any of the significant issues in the litigation which achieved some of the benefits sought by bringing the suit.' " *District of Columbia v. Patterson,* 667 A.2d 1338, 1345 (D.C.1995) (quoting *Henderson v. District of Columbia,* 493 A.2d 982, 999 (D.C.

For the foregoing reasons, the Commission's attorney's fee award is

*Affirmed.*

1985)); *see also Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); *Hensley, supra,* 461 U.S. at 433, 103 S.Ct. 1933 (a plaintiff prevails if he "succeed[s] on any significant issue in litigation

which achieves some of the benefit the parties sought in bringing suit."). Under the *Hensley* analysis, a plaintiff may "prevail" even though he does not win all of his claims for relief. *Id.* at 434, 103 S.Ct. 1933 ("results obtained" is one factor in the fee award calculus); *see also Knight v. Georgetown University, et al.,* 725 A.2d 472, 486–87 (D.C.1999).